UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BERNARDO SANTANA,

     Plaintiff,

vs.                                                              Case No.:

FORMER SHERIFF MIKE WILLIAMS, and/or SHERIFF T.K. WATERS, in their official capacity as Sheriffs of the CONSOLIDATED CITY OF JACKSONVILLE, FLORIDA, officer M.A. MOREL-SEPULVEDA, individually, OFFICER J. BENSON, individually, JOHN DOE 1, individually, and JOHN DOE 2, individually,

     Defendants.

_____/

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff, BERNARDO SANTANA, ("SANTANA"), by and through the undersigned counsel, hereby files this Complaint against Defendants, FORMER SHERIFF MIKE WILLIAMS and/or SHERIFF T.K. WATERS, OFFICER M.A. MOREL-SEPULVEDA ("MOREL- SEPULVEDA"), OFFICER J. BENSON ("BENSON"), OFFICER JOHN DOE 1 ("JOHN DOE 1"), and OFFICER JOHN DOE 2 ("JOHN DOE 2"), in their individual capacities and for acts that occurred during the course and scope of their employment with the Defendant,

CONSOLIDATED CITY OF JACKSONVILLE, FLORIDA ("COJ") and in support

thereof alleges as follows:

## JURISDICTION AND VENUE

1.     Plaintiff invokes jurisdiction of this Court pursuant to 42 U.S.C. §§1983 and 1988 and 28 U.S.C. §§1331 and 1343, as to the federal claims asserted herein.

2.     The Court has federal question jurisdiction over SANTANA's federal law claims, pursuant to 28 U.S.C. §§ 1331, 1343. Plaintiff, SANTANA's state law claims are related to these federal claims and form a part of the same case or controversy. The Court accordingly has supplemental jurisdiction over SANTANA's state law claims, pursuant to 28 U.S.C. 1367.

3.     Venue in this district is proper pursuant to 28 U.S.C. §1391, as all the acts or omissions giving rise to this action occurred in Jacksonville, Duval County, Florida.

4.     Plaintiff has performed all conditions precedent to the maintenance of this action, including those set forth in Florida Statute § 768.28(6) have been performed, have occurred prior to its institution, or have been waived.

## PARTIES

5.     SANTANA, is a resident of Jacksonville, Duval County, Florida.

6.     Defendants, FORMER SHERIFF MIKE WILLIAMS and/or SHERIFF T.K. WATERS, in their official capacity as Sheriffs of COJ, were at all times relevant, responsible for the supervision, training, instruction, discipline, control, and conduct of police officers of the Jacksonville Sheriff's Office and made policy for the Jacksonville Sheriff's Office with respect to seizures, searches, arrests and use of force.  At all times relevant, Defendants, FORMER SHERIFF MIKE WILLIAMS and/or SHERIFF T.K. WATERS had the power, right and duty to train and control his officers, agents and employees to conform to the Constitution of the Unites States and to ensure that all orders, rules, instructions and regulations promulgated for the Jacksonville Sheriff's Office were consistent with the Constitution of the United States.  At all times relevant, FORMER SHERIFF MIKE WILLIAMS and/or SHERIFF T.K. WATERS' agents and employees acted under color of state of law.

7.     Defendant MOREL-SEPULVEDA, was, at all times relevant, a sworn member of the Jacksonville Sheriff's Office with COJ. At all times relevant to this cause, Defendant, MOREL-SEPULVEDA acted in conformity with the customs, practices and/or policies of COJ and acted under the color of state law.

8.     Defendant BENSON, was at all times relevant, a sworn member of the Jacksonville Sheriff's Office with COJ. At all times relevant to this cause, Defendant, BENSON acted in conformity with the customs, practices and/or

policies of COJ and acted under the color of state law.

9.      Defendant, Officer, JOHN DOE 1, the identity of whom is presently unknown to the Plaintiff, was, at all times relevant, a sworn member of the Jacksonville Sheriff's Office with COJ. At all times relevant to this cause, Defendant, JOHN DOE 1 acted in conformity with the customs, practices and/or policies of COJ and acted under the color of state law.

10.     Defendant, Officer, JOHN DOE 2, the identity of whom is presently unknown to the Plaintiff, was at all times relevant, a sworn member of the Jacksonville Sheriff's Office with COJ.[1]   At all times relevant to this cause, Defendant, JOHN DOE 2 acted in conformity with the customs, practices and/or policies of COJ and acted under the color of state law.

## FACTUAL ALLEGATIONS

11.     On May 31, 2020 SANTANA was attending a peaceful protest at the Duval County Courthouse following the death of George Floyd.

12.     At the protest, COJ made the following announcement to the attendees who were assembled at the Duval County Courthouse:

> "The Jacksonville Sheriff's Office (JSO) respects and acknowledges the rights of persons to express their views in a lawful manner. JSO's role is to protect the rights of the public and peaceful protestors by enforcing the law and

---

[1] Mike Williams was acting Sheriff for The Jacksonville Sheriff's Office at the time the incident outlined herein occurred

maintaining order. During a lawful protest, JSO will, however, take appropriate action in response to anyone who breaches the peace, engages in disorderly conduct, incites a riot by words or actions, or when other criminal violations are observed or reported. Please be reminded that anyone who engages in unlawful behavior that obstructs or interferes with a lawful and peaceful protest may also be subject to arrest or citation. If you have any questions regarding what is or is not prohibited activity, please ask to speak to an on-scene police supervisor. Thank you for your assistance and cooperation in maintaining order and civility today."

13.     The crowd of protestors that day was not overly large or uncontrollable.  The protestors were not obstructing any public access or blocking traffic.

14.     There was no clear and present danger present to justify stopping or interrupting the public protest.

15.     Notwithstanding the nature of the protest, law enforcement officers, including the Defendants, presented in riot gear with instructions to direct the protesters away from the area.  SANTANA walked away from the officers in riot gear as they began dispersing the crowd from the immediate area of the Duval County Courthouse.

16.     While SANTANA was exiting the immediate area, JOHN DOE 1 asked SANTANA to backup. After SANTANA complied with JOHN DOE 1's commands, he was forcibly and violently taken to the ground by Defendant JOHN

DOE 2.

17.     SANTANA was then handcuffed and taken to a staging area where he was arrested by MOREL-SEPULVEDA and transported to the Duval County Jail where he was incarcerated for charges of Unlawful Assembly.

18.     Defendant, BENSON assisted in the arrest and booking of SANTANA.

19.     At no point did SANTANA breach the peace, engage in disorderly conduct or incite a riot by words or actions.

20.     SANTANA also complied with JOHN DOE 1's command at the time of his take down and arrest. As such, there was no probable cause to arrest SANTANA.

21.     Hundreds of other protesters were present that day, who were also peacefully protesting along with SANTANA, but were not arrested nor charged.

22.     Once arrested, Mr. Santana was held for several hours prior to being booked into the Duval County Jail.  He was given a blanket bond of $753 that was inexplicably doubled to $1,503.  Furthermore, Mr. Santana attempted to bond out on Sunday night but was denied due to the curfew put in place by city officials.

23.     SANTANA spent over 24 hours in jail before bail was set and the prosecution of SANTANA commenced.

24.     On June 12, 2020 the State Attorney's Office dismissed all charges

against SANTANA.

25.     Defendant, JOHN DOE 2 used an unwarranted level of force which can only be described as excessive while executing the wrongful arrest of SANTANA when they slammed his body onto the ground.

26.     The wholly avoidable events described herein were captured on video by SANTANA himself, as well as other participants in the protests.

27.     Defendants, MOREL-SEPULVEDA, BENSON, JOHN DOE 1 and JOHN DOE 2 caused a prosecution to be instituted against Plaintiff, SANTANA in the County Court, in and for Duval County, Florida, Case #16-2020-MM-008511-AXXX.

28.     Defendants, MOREL-SEPULVEDA, BENSON, JOHN DOE 1 and JOHN DOE 2 acted with malice in instituting the aforesaid prosecution which commenced despite a lack of probable cause and/or with express malice as shown by their reckless disregard for the rights of SANTANA.

29.     No prosecution of Plaintiff, SANTANA would have occurred but for the actions of Defendants, MOREL-SEPULVEDA, BENSON and JOHN DOE 1 and JOHN DOE 2.

30.     The criminal proceeding was resolved in favor of Plaintiff, SANTANA by a dismissal of all charges. (See *State of Florida v. Bernardo Santana*, Case # 16-2020-MM-008526-AXXX-MA, DE #14 and #15.)

31.     The facts of Plaintiff, SANTANA's prosecution became known to many persons unknown to Plaintiff as a result of being made part of the public records of Duval County, Florida and appearing on court documents available to public scrutiny.

32.     As a result of the actions of Defendants, MOREL-SEPULVEDA, BENSON, JOHN DOE 1 and JOHN DOE 2, Plaintiff, SANTANA suffered physical injuries, pain and suffering, emotional anguish and distress, embarrassment, and damage to his reputation, all of which continue to this day and are likely to continue in the future.

33.     SANTANA also suffered monetary damages as a result of the arrest and prosecution instituted by Defendants MOREL-SEPULVEDA, BENSON, JOHN DOE 1 and JOHN DOE 2.

34.     The unjustified use of force against SANTANA was not isolated, but was part of a longstanding trend of similar instances of force and other forms of misconduct by JSO officers.

35.     In December 2004, a member of JSO slammed Sammy Lee Evans to the ground.  As a result, Mr. Evans's head hit the ground with such force that it resulted in Mr. Evans' death.  Mr. Evans was not resisting the arrest, which was for an open container of alcohol.

36.     In January 2006, members of JSO broke the right jaw of Bryan Barnes

when effectuating his arrest. The JSO members struck Barnes despite the fact that Barnes complied with all of their commands and did not resist the officers while being arrested. *See Barnes v. Sheriff Rutherford, et. al.,* Case No.:3:08-cv-217-J-33JRK (M.D. Fla. Jacksonville Division). There was no JSO investigation of the officers' use of excessive force against Mr. Barnes until prompted by the City of Jacksonville Office of General Counsel sending of a complaint to JSO in January 12, 2011. This complaint and the accompanying investigation occurred four years after the incident, three years after Mr. Barnes filed a federal lawsuit against the officers involved and Sheriff Rutherford, and nearly two years after said lawsuit was settled. The JSO Internal Affairs Unit concluded as follows relating to Mr. Barnes' incident: "that charge of EXCESSIVE FORCE against Police Lieutenant R. W. Beltz #7862 and Police Officer C. M. Weippert # 7829 be classified as NOT SUSTAINED.

37.    In January 2006, a member of JSO kneed Ronal Ferrera in the face three times while Ferrera was handcuffed.

38.    In October 2007, two members of JSO, along with a civilian "ride along," rammed the head of Colin Runge into a steel door in the intake area of the jail. At the time, Runge was fully secured and unable to resist the officers as he was in total appendage restraint, otherwise known as being "hog-tied." *See Runge v. Snow,* Case No.: 3:10-cv-900-HES-JRK (M.D. Fla. Jacksonville Division).

39.    In January 2008, a member of JSO slammed Larue Perkins onto the pavement of a parking lot, breaking his jaw. At the time, Perkins was complying with the officer's directive to leave the parking area. Perkins was then falsely arrested after having his jaw broken. *See Perkins v. Tolen, et al.,* Case No.: 3:10- cv-851-RBD-TEM (M.D. Fla. Jacksonville Division). Perkins filed a written internal affairs complaint with JSO shortly after the January 2008 incident. On January 21, 2011, almost three years after the incident, the JSO Internal Affairs Unit received an "in-house complaint" from the City of Jacksonville's Office of General Counsel regarding the January 2008 incident involving Perkins. The subject matter of the complaint was the JSO officer's excessive use of force against Perkins. The in-house complaint was then investigated by the JSO Internal Affairs Unit, which concluded that "the charge of Excessive Force against Police Officer

R. J. Tolen #5597 be classified as NOT SUSTAINED."

40.    In September 2008, a member of JSO dragged James Lunsford out of a police vehicle while he was handcuffed and dropped Mr. Lunsford on his head, leaving Mr. Lunsford paralyzed. The officer did so despite Lunsford's prior warning to the officer that Lunsford had four screws and a plate in his neck. *See Lunsford v. Rutherford, et. al.,* Case No.:3:09-cv-01015-MMHMCR (M.D. Fla. Jacksonville Division). Upon information and belief, the incident was referred to JSO Internal Affairs and no disciplinary action was taken against the

officer involved.

41.     In May 2010, a member of JSO fractured multiple bones in David Kemp's face by violently striking him as he laid on the ground in compliance with the officer's commands to do so. *See Kemp v. Rutherford et. al.,* Case No.: 3:10- cv-HES-JRK (M.D. Fla. Jacksonville Division).  Sheriff Rutherford had actual notice of Mr. Kemp's encounter with JSO because of the federal lawsuit filed against him, yet Sheriff Rutherford failed to conduct an internal affairs investigation into the incident and officer involved and failed to discipline the officer involved.

42.     In March 2012, members of JSO questioned Kyle Fowler concerning a stolen vehicle. At the beginning of the questioning, Mr. Fowler was told by the JSO members that he was free to go at any time he chose. After initially agreeing to speak to the officers, Mr. Fowler turned away from the JSO members due to the behavior of the officers and told them he was not interested in speaking anymore, and began to walk towards his gate. As he did so, the JSO members knocked Mr. Fowler through a closed metal gate and onto the ground. The JSO members then rolled Mr. Fowler onto his stomach, drove a knee into his back, and violently pulled his arms behind him to handcuff him, injuring Mr. Fowler in the process of effectuating his false arrest. The charge on which Mr. Fowler was falsely arrested, resisting an officer without violence, was ultimately

dismissed. The JSO members involved were not disciplined or reprimanded for their actions against Mr. Fowler.

43.     In June 2013, a member of JSO violently slammed Robert Slade to the ground causing him to hit his head, teeth, and shoulder, after he was involved in a minor traffic accident.  As Mr. Slade was merely asking the officer when his insurance information would be taken following the accident, he was forcefully thrown to the ground. Mr. Slade was falsely arrested for resisting an officer without violence in violation of §843.02, Fla. Stat. (2012). The charges against Mr. Slade were dismissed. The JSO member involved was not disciplined or reprimanded for his actions against Mr. Slade.

44.     On November 12, 2014, at the Pretrial Detention Facility, a member of JSO violently slammed Deandre Ezell's head into a concrete wall, while Mr. Ezell was handcuffed.  The use of force knocked Mr. Ezell unconscious and resulted in Mr. Ezell's hospitalization. At the time of the incident, Mr. Ezell was a minor.

45.     In July 2015, members of JSO punched Kelli Wilson in the face after she refused their unlawful commands to hand over her cell phone, she was using to record public police activity.  JSO officers proceeded to violently take Wilson to the ground, pulling her hair and attempting to rip her arms out from under her. Ms. Wilson was arrested for resisting an officer without violence.  The

charges against Ms. Wilson were dismissed. JSO members were not disciplined or reprimanded for their actions against Ms. Wilson.

46.     On April 13-14, 2016, a JSO officer violently body slammed John Blessing who was attending a concert at Veterans Memorial Arena causing bodily injury. Blessing was arrested by that JSO officer's fiancé (also a JSO officer) for resisting without violence, disorderly intoxication, and battery. All were dismissed by the trial court.

47.     On April 27, 2016, Mayra Martinez was at her place of employment, Scores, when JSO officers arrived after calls about her intoxication. JSO officers slammed Ms. Martinez into the pavement and punched her numerous times. Upon arrival at the Pretrial Detention Facility, JSO officers hit Martinez with a closed fist in her stomach, chest, and face, knocking her unconscious. Martinez remained handcuffed during the encounter.

48.     On April 4, 2017, Connell Crooms was participating in a peaceful protest at Hemming Park Plaza in Jacksonville Florida, when a counter-protestor reached his arm over the shoulder of a member of JSO and stuck his middle finger in Mr. Crooms' face. Rather than apprehend the aggressor, members of JSO threw Connell Crooms to the ground, struck him repeatedly in the back and face, and fired a Taser into his back, all of which caused Mr. Crooms to lose consciousness and require hospitalization. Mr. Crooms is deaf

and did not resist or disobey any of the officers' commands.

49.     On April 26, 2017, Daniel Nyman was seeking treatment at UF Health Jacksonville when the same JSO officer who body slammed Blessing spat at Mr. Nyman, charged at Mr. Nyman, threw him to the ground, shoved Mr. Nyman's jaw into the ground with his knee, and then flipped Mr. Nyman over and kneed him in the back. Mr. Nyman required repair of his previously treated broken jaw and spent five days in the hospital as a result of the attack.

50.     In June 2017, members of JSO struck Elias Campos, a seventeen-year-old minor, multiple times in the face while the minor was handcuffed inside a patrol car. The minor child required medical attention at the scene.

51.     On June 23, 2017, Jonathan Williams was pulled over by JSO officers, who placed one handcuff on Mr. Williams before punching him twice in the face despite the fact he was not resisting. The JSO officer proceeded to throw Mr. Williams to the ground, punching him in the back and kneeing him in the head. As a result, Mr. Williams suffered fractures in the right orbital wall, left inferior, and medial orbital wall of his skull, as well as soft tissue swelling and hematoma in the back of his head. The officers involved in the use of force were not reprimanded or disciplined.

## COUNT I
## 42 U.S.C. § 1983: FIRST AMENDMENT RETALIATION
## (DEFENDANT MOREL-SEPULVEDA)

52.     Plaintiff, SANTANA hereby realleges and incorporates by reference paragraphs 1 - 51 in this complaint as though fully set forth herein.

53.     The First Amendment protects the right of the people to peacefully assemble.   SANTANA was exercising his right to engage in constitutionally protected free speech by participating in the protest on May 31, 2020.

54.     Defendant, MOREL-SEPULVEDA, retaliated against SANTANA by unlawfully arresting him, without probable cause, while he was exercising his right to assemble during the May 31, 2020 protest.

55.     The actions of MOREL-SEPULVEDA against SANTANA prevented SANTANA from continuing to exercise his right to assemble.

56.     Plaintiff, SANTANA's arrest and injuries while attending the protest were directly caused by Defendant, MOREL-SEPULVEDA.

57.     As a direct and proximate result of retaliation by Defendant MOREL-SEPULVEDA, Plaintiff suffered a deprivation of his federally protected rights, liberty and freedom; bodily injury that resulted in pain, suffering and mental anguish; and voluminous medical expenses for treatment and care. These losses are either permanent and/or continuing. Plaintiff will continue to suffer these losses in the future. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

WHEREFORE, Plaintiff SANTANA demands judgment against Defendant, MOREL-SEPULVEDA for:

      (a)    actual and compensatory damages,

      (b)    punitive damages,

      (c)    an award of attorney's fees and costs, and

      (d)    any other relief this Court deems just and appropriate.

## COUNT II
## 42 U.S.C. § 1983: FIRST AMENDMENT RETALIATION
## (DEFENDANT OFFICER BENSON)

58.    Plaintiff, SANTANA hereby realleges and incorporates by reference paragraphs 1 - 51 in this complaint as though fully set forth herein.

59.    The First Amendment protects the right of the people to peacefully assemble.  SANTANA was exercising this right as he attended the protest on May 31, 2020.

60.    Defendant, BENSON, retaliated against SANTANA by unlawfully arresting him, without probable cause, while he was exercising his right to assemble during the May 31, 2020 protest.

61.    The actions of BENSON against SANTANA prevented SANTANA from continuing to exercise his right to assemble.

62.    Plaintiff, SANTANA's arrest and injuries while attending the protest were directly caused by Defendant, BENSON.

63.     As a direct and proximate result of retaliation by Defendant BENSON, Plaintiff suffered a deprivation of his federally protected rights, liberty and freedom; bodily injury that resulted in pain, suffering and mental anguish; and voluminous medical expenses for treatment and care. These losses are either permanent and/or continuing. Plaintiff will continue to suffer these losses in the future. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

WHEREFORE, Plaintiff, BERNARDO SANTANA, demands judgment against Defendant BENSON and prays for the following relief:

(a)     actual and compensatory damages,

(b)     punitive damages,

(c)     an award of attorney's fees and costs, and

(d)     any other relief this Court deems just and appropriate.

**COUNT III**
**42 U.S.C. § 1983: FIRST AMENDMENT RETALIATION**
**(DEFENDANT JOHN DOE 1)**

64.     Plaintiff, SANTANA hereby realleges and incorporates by reference paragraphs 1 - 51 in this complaint as though fully set forth herein.

65.     The First Amendment protects the right of the people to peacefully assemble.  SANTANA was exercising this right as he attended the protest on May 31, 2020.

66.     Defendant, JOHN DOE 1, retaliated against SANTANA by unlawfully stopping the protest, commanding Plaintiff to disperse before the protest ended when Plaintiff was not being disruptive or disorderly during the May 31, 2020 protest.

67.     The actions of JOHN DOE 1 against SANTANA prevented SANTANA from continuing to exercise his right to assemble.  Any act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983.

68.     SANTANA's inability to exercise his First Amendment right to assemble was directly caused by Defendant, JOHN DOE 1.

69.     As a direct and proximate result of retaliation by Defendant JOHN DOE 1, Plaintiff suffered a deprivation of his federally protected rights, liberty and freedom; bodily injury that resulted in pain, suffering and mental anguish; and voluminous medical expenses for treatment and care. These losses are either permanent and/or continuing. Plaintiff will continue to suffer these losses in the future. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

WHEREFORE, Plaintiff, BERNARDO SANTANA, demands judgment against Defendant, JOHN DOE 1 and prays for the following relief:

(a)     actual and compensatory damages,

(b)     punitive damages,

(c)     an award of attorney's fees and costs, and

(d)     any other relief this Court deems just and appropriate.

## COUNT IV
## 42 U.S.C. § 1983: FIRST AMENDMENT RETALIATION AGAINST OFFICER JOHN DOE 2

70.     Plaintiff, SANTANA hereby realleges and incorporates by reference paragraphs 1 - 51 in this complaint as though fully set forth herein.

71.     The First Amendment protects the right of the people to peacefully assemble.  SANTANA was exercising this right as he attended the protest on May 31, 2020.

72.     Defendant, JOHN DOE 2, retaliated against SANTANA by unlawfully arresting and battering him while he was exercising his right to assemble during the May 31, 2020 protest.

73.     The actions of JOHN DOE 2 against SANTANA prevented SANTANA from continuing to exercise his right to assemble.

74.     Plaintiff, SANTANA's arrest and injuries while attending the protest were directly caused by Defendant, JOHN DOE 2.

75.     As a direct and proximate result of retaliation by Defendant JOHN DOE 2, Plaintiff suffered a deprivation of his federally protected rights, liberty

and freedom; bodily injury that resulted in pain, suffering and mental anguish; and voluminous medical expenses for treatment and care. These losses are either permanent and/or continuing. Plaintiff will continue to suffer these losses in the future. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

WHEREFORE, Plaintiff, BERNARDO SANTANA, demands judgment against Defendant, JOHN DOE 2 and prays for the following relief:

(a)    actual and compensatory damages,

(b)    punitive damages,

(c)    an award of attorney's fees and costs, and

(d)    any other relief this Court deems just and appropriate.

## COUNT V
## 42  U.S.C. § 1983: EXCESSIVE FORCE
## (DEFENDANT OFFICER JOHN DOE 2

76.    Plaintiff, SANTANA hereby realleges and incorporates by reference paragraphs 1 - 51 in this complaint as though fully set forth herein.

77.    At the time of the subject unlawful arrest, SANTANA had not committed any crime, was not committing a crime and was not about to commit a crime.

78.    At the time of the subject unlawful arrest, SANTANA was not an immediate threat to himself, the community or to law enforcement.

79.    At the time of the subject unlawful arrest, SANTANA was complying with JOHN DOE 1's commands to back up.  SANTANA was not ignoring law enforcement commands, actively resisting arrest, nor was he fleeing arrest.

80.    During SANTANA's arrest, Defendant JOHN DOE 2 used an objectively unreasonable and excessive amount of force given the facts and circumstances described herein.  He did so with a depraved indifference to human life and conscious disregard for the safety of SANTANA and the general public.

81.    These acts committed by Defendant, JOHN DOE 2, were in gross disregard of Plaintiff SANTANA's constitutional rights and occurred while JOHN DOE 2 was acting under color of law.  As a result, JOHN DOE 2 deprived Plaintiff, SANTANA of his constitutional rights to be free from excessive police force under the Fourth Amendment.

82.    Plaintiff, SANTANA's arrest and injuries while protesting were directly caused by Defendant JOHN DOE 2's outrageous conduct, and ultimately resulted in the need for immediate medical care.

83.    As a direct and proximate result of the excessive use of force by Defendant, JOHN DOE 2, Plaintiff suffered a deprivation of liberty and freedom; bodily injury that resulted in pain, suffering and mental anguish; and

voluminous medical expenses for treatment and care. These losses are either permanent and/or continuing. Plaintiff will continue to suffer these losses in the future. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

WHEREFORE, Plaintiff, BERNARDO SANTANA, demands judgment against Defendant JOHN DOE 2 and prays for the following relief:

      (a)    actual and compensatory damages,

      (b)    punitive damages,

      (c)    an award of attorney's fees and costs, and

      (d)    any other relief this Court deems just and appropriate.

## COUNT VI: 42 U.S.C. § 1983- DELIBERATE INDIFFERENCE (DEFENDANT FORMER SHERIFF MIKE WILLIAMS and/or SHERIFF WATERS

84.    Plaintiff, SANTANA hereby realleges and incorporates by reference paragraphs 1 - 51 in this complaint as though fully set forth herein.

85.    Defendant, FORMER SHERIFF MIKE WILLIAMS and/or SHERIFF WATERS, knew or should have known that officers under their direction would be required to make arrests. FORMER SHERFIFF MIKE WILLIAMS and/or SHERIFF WATERS were responsible for properly training officers in the constitutional limitations on the use of force during arrests.

86.    The subject arrest herein, deprived SANTANA of his constitutionally

protected right to assemble. Additionally, in effecting the unlawful arrest, Defendants, MOREL-SEPULVEDA, BENSON and JOHN DOE 2 exercised unreasonable and excessive force when they tackled SANTANA from behind, slammed him onto the ground and unlawfully arrested him. Such excessive force is not warranted when the subject is not in the process of committing a crime, is not an immediate threat and is not resisting arrest. The actions of the Defendant's when slamming SANTANA onto the ground, resulted in physical injury.

85.    Defendant, FORMER SHERIFF MIKE WILLIAMS and/or SHERIFF WATERS, knew or should have known, omissions in training, would pose a serious risk to the citizens of Jacksonville and such inaction would result in violations to SANTANA's constitutionally protected rights, including the right to assemble and to be free from the use of excessive force.

86.    Defendant, FORMER SHERIFF MIKE WILLIAMS and/or SHERIFF WATERS, failure to train officers under their direction to be capable of properly performing the duties of a law enforcement officer, including the ability to lawfully effect arrests, demonstrates a deliberate indifference to the constitutional rights of the citizens of Jacksonville, including SANTANA.

88.    The violations outlined herein were caused by Defendant, FORMER SHERIFF MIKE WILLIAMS and/or SHERIFF WATERS' lack of training and

supervision of his officers; who, while under the color of law on May 31, 2020, demonstrated their inability conduct themselves in a manner that considered the federally protected rights and safety of Jacksonville citizens. With proper training, Defendants MOREL-SEPULVEDA, BENSON and JOHN DOE 2 should have known to use force that was objectively reasonable in light of the totality of the circumstances.

88.     As a direct and proximate result of Defendant, FORMER SHERIFF MIKE WILLIAMS and/or SHERIFF WATERS deliberate indifference for properly training the officers of the Jacksonville Sheriff's Office, SANTANA sustained an infringement on his constitutional rights; a deprivation of liberty and freedom; bodily injury that resulted in pain, suffering and mental anguish; and voluminous medical expenses for medical treatment and care. These losses are either permanent and/or continuing and Plaintiff will continue to suffer these losses in the future. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

WHEREFORE, Plaintiff, SANTANA, demands judgment against Defendant SHERIFF WATERS in his official capacity as Sheriff for the City of Jacksonville and prays for the following relief:

a.     actual and compensatory damages,

      b.     an award of attorney's fees and costs, and

      c.     any other relief this Court deems just and appropriate.

**COUNT VII**
**42 U.S.C. §1983 - FALSE ARREST**
**(DEFENDANT MOREL-SEPULVEDA)**

97.    Plaintiff, SANTANA hereby realleges and incorporates by reference paragraphs 1 - 51 in this complaint as though fully set forth herein.

98.    On May 31, 2020, Defendant, MOREL-SEPULVEDA seized and arrested Plaintiff, SANTANA without a warrant or probable cause that Plaintiff, SANTANA had committed a law violation.

99.    At the time of SANTANA's arrest, he was exercising his right to assemble.  He was not in the process of committing a crime; was not an immediate threat to himself, the community or to law enforcement; and he was not resisting arrest for fleeing from law enforcement.  In fact, when SANTANA was tackled by JOHN DOE 2, he was complying with the commands of Defendant JOHN DOE 1.

100.    Defendant, MOREL-SEPULVEDA intentionally committed acts that violated SANTANA's constitutional right to not be arrested without probable cause.

101.    The actions and inactions of Defendant, MOREL-SEPULVEDA constituted a  willful, wanton, callous and knowing disregard of the clearly

established rights of Plaintiff, SANTANA under the law, including the right to be free from unreasonable searches and seizures.

102.    When Defendant, MOREL-SEPULVEDA arrested SANATA, he did not know of any facts or circumstances that would cause a reasonable officer to believe that SANTANA had committed, was committing, or was about to commit, an offense. SANTANA was complying with JOHN DOE 1's commands.

103.    As a direct and proximate result of Defendant, MOREL-SEPULVEDA's conduct, Plaintiff suffered an infringement on his constitutional rights; a deprivation of liberty and freedom; bodily injury that resulted in pain, suffering and mental anguish; and voluminous medical expenses for medical treatment and care. These losses are either permanent and/or continuing and Plaintiff will continue to suffer these losses in the future. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

104.    Defendant, MOREL-SEPULVEDA acted under the color of law in that he claimed to be performing an official duty, but his acts were outside the limits of lawful authority and were abusive in manner and acted in a way that misused his power and was only able to do so because he was an official.

105.     Based on information or belief, Defendant, MOREL-SEPULVEDA was deliberately acting in accordance with a COJ pattern, practice, policy, or custom of conducting unlawful arrests.

106.     Defendant, MOREL-SEPULVEDA's conduct, taken pursuant to COJ's pattern, practice, policy or custom of unlawful arrests has resulted in irreparable harm to SANTANA and will continue to result in irreparable harm to all individuals who are arrested under similar circumstances.

107.     WHEREFORE, Plaintiff SANTANA, demands judgment against Defendant MOREL-SEPULVEDA and prays for the following relief:

     d.     actual and compensatory damages,

     e.     punitive damages,

     f.     an award of attorney's fees and costs, and

     g.     any other relief this Court deems just and appropriate.

### COUNT VIII
### 42 U.S.C. §1983 -FALSE ARREST
### (DEFENDANT OFFICER BENSON)

108.     Plaintiff, SANTANA hereby realleges and incorporates by reference paragraphs 1 - 51 in this complaint as though fully set forth herein.

109.     On May 31, 2020, Defendant, BENSON seized and arrested Plaintiff, SANTANA without a warrant or probable cause that Plaintiff, SANTANA had committed a law violation.

110.   At the time of SANTANA's arrest, he was exercising his right to assemble.  He was not in the process of committing a crime; was not an immediate threat to himself, the community or to law enforcement; and he was not resisting arrest for fleeing from law enforcement.  In fact, when SANTANA was tackled by JOHN DOE 2, he was complying with the commands of Defendant JOHN DOE 1.

111.   Defendant, BENSON intentionally committed acts that violated SANTANA's constitutional right to not be arrested without probable cause.

112.   The actions and inactions of Defendant, BENSON constituted a willful, wanton, callous and knowing disregard of the clearly established rights of Plaintiff, SANTANA under the law, including the right to be free from unreasonable searches and seizures.

113.   When Defendant, BENSON arrested SANATA, he did not know of any facts or circumstances that would cause a reasonable officer to believe that SANTANA had committed, was committing, or was about to commit, an offense. SANTANA was complying with JOHN DOE 1's commands.

114.   As a direct and proximate result of Defendant, BENSON's conduct, Plaintiff suffered an infringement on his constitutional rights; a deprivation of liberty and freedom; bodily injury that resulted in pain, suffering and mental anguish; and voluminous medical expenses for medical treatment and care. These

losses are either permanent and/or continuing and Plaintiff will continue to suffer these losses in the future. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

115.    Defendant, BENSON acted under the color of law in that he claimed to be performing an official duty, but his acts were outside the limits of lawful authority and were abusive in manner and acted in a way that misused his power and was only able to do so because he was an official.

116.    Based on information or belief, Defendant, BENSON was deliberately acting in accordance with a COJ pattern, practice, policy, or custom of conducting unlawful arrests.

117.    Defendant, BENSON's conduct, taken pursuant to COJ's pattern, practice, policy or custom of unlawful arrests has resulted in irreparable harm to SANTANA and will continue to result in irreparable harm to all individuals who are arrested under similar circumstances.

WHEREFORE, Plaintiff, BERNARDO SANTANA, demands judgment against Defendant BENSON and prays for the following relief:

(a)    actual and compensatory damages,

(b)    punitive damages,

(c)    an award of attorney's fees and costs, and

(d)      any other relief this Court deems just and appropriate.

## COUNT IX
## STATE LAW CLAIM:  BATTERY AGAINST OFFICER JOHN DOE 2

118.   Plaintiff, SANTANA hereby realleges and incorporates by reference paragraphs 1 - 51 in this complaint as though fully set forth herein.

119.   Defendant, JOHN DOE 2 acted against SANTANA when he used unreasonable and excessive force against Plaintiff when, with a depraved indifference to human life and conscious disregard for the safety of the general public, when JOHN DOE 2 intentionally battered SANTANA by tackling him to the ground against his will, without legal justification.

120.    As a direct and proximate result of battery by Defendant, JOHN DOE 2, Plaintiff suffered a deprivation of liberty and freedom; bodily injury that resulted in pain, suffering, and mental anguish; and voluminous medical expenses for medical treatment and care. These losses are either permanent and/or continuing and Plaintiff will continue to suffer these losses in the future. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

WHEREFORE, Plaintiff, BERNARDO SANTANA, demands judgment against Defendant JOHN DOE 2 and prays for the following relief:

(a)      Actual and compensatory damages;

(b)    punitive damages,

(c)    an award of attorney's fees and costs, and

(d)    any other relief this Court deems just and appropriate.

## COUNT X
## STATE LAW CLAIM- FALSE IMPRISONMENT
## (DEFENDANT, MOREL-SEPULVEDA)

202.   Plaintiff, SANTANA hereby realleges and incorporates by reference paragraphs 1 - 51 in this complaint as though fully set forth herein.

203.   On May 31, 2020, SANTANA was unlawfully arrested by Defendant MOREL-SUPULVEDA.

204.   At the time of the arrest, SANTANA had not committed a crime, was not committing a crime and was not about to commit a crime.  SANTANA was not an immediate threat to himself, the community or to law enforcement. In fact, SANTANA was following the commands of JOHN DOE 1.

205.   Defendant, BENSON held SANTANA handcuffed in a police van in nearby field for hours before transporting him down to the Duval County Detention Center.

205.   Defendant, BENSON unlawfully restrained SANTANA for hours against his will under circumstances where such detention was unreasonable and unwarranted.

206. As a result of the false arrest, SANTANA suffered loss of liberty,

loss of monetary earnings, injury to reputation, humiliation and severe emotional and psychological distress.

WHEREFORE, Plaintiff, BERNARDO SANTANA, demands judgment against Defendant MOREL-SEPULVEDA and prays for the following relief:

(a)   Judgment for compensatory damages in excess of $180,000;

(b)   Judgment for exemplary or punitive damages;

(c)   Cost of suit;

(d)   Trial by jury as to all issues so triable;

(e)   Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1983;  and

(f)   Such other relief as this Honorable Court may deem just and appropriate.

## COUNT XI
## STATE LAW CLAIM- FALSE IMPRISONMENT
## (DEFENDANT OFFICER BENSON)

202.   Plaintiff, SANTANA hereby realleges and incorporates by reference paragraphs 1 - 51 in this complaint as though fully set forth herein.

203.   On May 31, 2020, SANTANA was unlawfully arrested by Defendant BENSON.

204.   At the time of the arrest, SANTANA had not committed a crime, was not committing a crime and was not about to commit a crime.  SANTANA

was not an immediate threat to himself, the community or to law enforcement. In fact, SANTANA was following the commands of JOHN DOE 1.

205.   Defendant, BENSON held SANTANA handcuffed in a police van in nearby field for hours before transporting him down to the Duval County Detention Center.

205.   Defendant, BENSON unlawfully restrained SANTANA for hours against his will under circumstances where such detention was unreasonable and unwarranted.

206.   As a result of the false arrest, SANTANA suffered loss of liberty, loss of monetary earnings, injury to reputation, humiliation and severe emotional and psychological distress.

WHEREFORE, Plaintiff, BERNARDO SANTANA, demands judgment against Defendant BENSON and prays for the following relief:

(a)    Judgment for compensatory damages in excess of $180,000;

(b)    Judgment for exemplary or punitive damages;

(c)    Cost of suit;

(d)    Trial by jury as to all issues so triable;

(e)    Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1983; and

(f)    Such other relief as this Honorable Court may deem just and appropriate.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF, BERNARDO SANTANA, individually, demands a trial by jury, and judgment against Defendants for special damages, damages for past, present, and future medical expenses, compensatory damages, exemplary and punitive damages, pain and suffering, and impairment of future earning capacity, together with attorney's fees and court costs and such other relief the as the Court may deem just and proper.

Dated this 7th day of June, 2023.

Respectfully submitted,

**PHILLIPS, HUNT, WALKER & HANNA**

*/s/ John M. Phillips_____*
JOHN M. PHILLIPS, B.C.S.
Florida Bar No.: 0477575
George J. Farrell, Esq.
Florida Bar No. 1022504
212 N. Laura Street
Jacksonville, FL 32202
(904) 444-4444
jmp@floridajustice.com
george@floridajustice.com
catherine@floridajustice.com